IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:11-CV-21-FL

WENDELL GATLING,                    )
                                    )
            Plaintiff/Claimant,     )
                                    )
                                    )        **MEMORANDUM AND**
            v.                      )        **RECOMMENDATION**
                                    )
MICHAEL J. ASTRUE, Commissioner of  )
Social Security,                    )
                                    )
            Defendant.              )

This matter is before the court on the parties' cross motions for judgment on the pleadings

[DE-30, DE-32] pursuant to Fed. R. Civ. P. 12(c). Claimant Wendell Gatling ("Claimant") filed this

action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his

applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending

motions are ripe for adjudication. Having carefully reviewed the administrative record and the

motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion

for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and

upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI on 29 April

2008, alleging disability beginning 17 November 2007. (R. 12). Both claims were denied initially

and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on

21 January 2010, at which Claimant was represented by counsel and a vocational expert ("VE")

appeared and testified. (R. 27-57). On 28 April 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 9-23). On 1 April 2011, the Appeals Council denied Claimant's request for review. (R. 1-3). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2), 416.920a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to develop the record by not seeking a medical source opinion concerning Claimant's functional limitations; (2) improper assessment of Claimant's residual functional capacity ("RFC"); and (3) improper reliance

3

on the VE's testimony. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 3, 5-6.

## FACTUAL HISTORY

### I.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 14). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease of the lumbar spine ("DDD"), degenerative joint disease of the hips bilaterally, clubfoot and obesity. *Id.* The ALJ also found Claimant had a nonsevere impairment of depression and applying the technique prescribed by the regulations, the ALJ found that Claimant's depression had resulted in mild limitations in his activities of daily living, social functioning and concentration, persistence and pace with no episodes of decompensation. (R. 15-16). At step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] that has the following physical limitations: ability to crouch for twenty percent of an 8-hour workday, stand or walk for up to 4 hours in an 8-hour workday with the use of

---

[1]     Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

a hand-held assistive device, sit for up to 6 hours in an 8-hour workday and "alternate sitting and standing every 30 minutes for no more than 5 minutes," occasional pushing and pulling with the left lower extremity, occasional balancing, stooping and climbing ramps and stairs, no climbing ladders, ropes or scaffolds and no crawling. (R. 17). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 18).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work. (R. 21). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 22).

## II.  Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 31 years old and unemployed. (R. 34, 36). Claimant is a high school graduate and a former correctional officer. (R. 35-36).

Claimant testified that he is disabled and unable to work due to clubfoot, back pain and pain in both hips. Claimant testified that as a result of his clubfoot and back and hip pain, walking is uncomfortable. (R. 43). Claimant's hip pain "feels like a needle is sticking" in him. (R. 43). Claimant testified that he will eventually will require hip replacement surgery. (R. 44). Claimant walks with a lift in his left shoe, but it does not help with his balance. (R. 38, 47). Claimant testified that he was prescribed a cane approximately three months prior to his disability hearing. (R. 38). Claimant testified that he has been placed on a lower dosage of narcotic pain medication due to side effects of nausea, dizziness, drowsiness and concentration difficulties. (R. 42-43). Claimant testified further, however, that he continues to experience drowsiness. (R. 43).

5

With respect to activities of daily living, Claimant testified that he spends his day "watching" his four children and watching television. (R. 35, 45). Claimant is unable to exercise due to pain and as a result, Claimant has gained weight over the last two years. (R. 45, 47). Claimant testified that he does not attend church or participate in family activities as often as he used to. (R. 48). Claimant testified that he is able to drive. (R. 48).

## III. Vocational Expert's Testimony at the Administrative Hearing

Roger Decker testified as a VE at the administrative hearing. (R. 27, 49-56). After the VE's testimony regarding Claimant's past work experience (R. 51), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed two hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform light work with nonexertional limitations that include no more than occasional pushing and pulling with the left lower extremity, no limitations on the right lower extremity, occasional climbing ramps, stairs, ladders, ropes and scaffolds and occasional balancing, stooping, kneeling, crouching and crawling. The VE responded in the negative but testified the hypothetical individual could perform other representative light, semi-skilled work, including that of security guard (DOT #372.667-034), gate guard (DOT #372.667-014) and patroller (DOT #207.685-014), as well as "work at the unskilled level." (R. 51-52).

Second, the ALJ asked whether Claimant's past relevant work or other work would be available if the hypothetical individual has the physical capacity to perform light work, can stand and/or walk four hours in an eight hour days with the use of a hand-held assistive device, can sit six hours in an eight hour workday with the ability to alternate periodically between sitting and standing

6

to relieve pain or discomfort, occasional pushing and pulling with the left lower extremity, occasional climbing ramps and stairs but never ladders, ropes or scaffolds, occasional balancing and stooping, no crawling and the ability to crouch twenty percent of an eight hour day. (R. 52). The VE testified the hypothetical individual would not be able to perform Claimant's past work but could perform "light, unskilled bench type work," which includes the following representative positions: assembler II (DOT #723.684-018), assembler of small parts (DOT #706.684-022) and electronics worker (DOT #726.687-010). (R. 53). Upon clarification from the ALJ that the ability to alternate periodically between sitting and standing means "every thirty minutes for no more than five minutes at a time," the VE testified that his response to the second hypothetical remained unchanged. (R. 55). In response to Claimant's counsel, the VE testified the need to alternate between standing and sitting every five minutes would have no impact on the representative positions. *Id.* The VE stated that knowledge regarding the availability of jobs allowing for a sit/stand option in North Carolina is based on data from the Census Bureau, the Bureau of Labor Statistics and North Carolina occupational data and not personal knowledge. (R. 56).

## DISCUSSION

I.      **The ALJ properly developed the record.**

Claimant contends the ALJ failed to fully develop the record by not requesting a medical source statement ("MSS") from Claimant's treating physician, Lawrence N. Larabee, Jr., M.D., of Northeastern Orthopedics, P.A., and by failing to recontact Dr. Larabee for clarification regarding his opinion that Claimant is disabled. Pl.'s Mem. at 6.

On 30 April 2008, Claimant reported to Dr. Larabee with complaints of increased pain and discomfort in his back, an inability to stand for long periods of time secondary to back pain and

7

intermittent numbness and tingling to the thighs. (R. 241). Dr. Larabee diagnosed Claimant with a history of scoliosis, status post thoracic and lumbar fusion and lumbalgia. *Id.* No physical examination findings were reported; however, Dr. Larabee opined that Claimant "is unable to be gainfully employed" and "[p]rior to any complete restrictions we will get his old surgical records." *Id.* On 30 May 2008, Dr. Larabee noted no physical examination findings. (R. 240). Rather, the treatment record is limited to Dr. Larabee's opinion that Claimant "is unable to work at this time secondary to increasing pain and discomfort, however, I think if he would get into a sedimentary [sic] lifestyle and was not very aggressive he may be able to avoid any further surgical intervention at this time." *Id.* No other progress reports for Dr. Larabee appear in the record.

In reviewing Dr. Larabee's treatment records, that ALJ noted that Dr. Larabee's opinion as to Claimant's ability to work was an issue reserved to the Commissioner and noted further that Dr. Larabee provided "little objective findings" in support thereof. (R. 20); *see* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); S.S.R. 96-5p, 1996 SSR LEXIS 2, at *5, 1996 WL 374183, at *2 (explaining that while statements concerning an individual's inability to work are reserved to the Commissioner, "our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner"). In particular, the ALJ noted that the information given, such as Claimant's inability to stand for long periods of time and episodes of intermittent numbness and tingling to Claimant's thighs, "does not support a finding of total disability." (R. 20). Finally, the ALJ noted that Dr. Larabee's opinion was "not consistent with the record as a whole, including the objective findings of consultative examiner, [Wiley Cockrell, Jr., M.D.]." *Id.* Claimant does not dispute the weight accorded Dr. Larabee's opinion but rather contends that "*it is precisely because* Dr. Larabee's report '[did] *not* contain all the

8

necessary information' to explain his opinion that the ALJ was required to recontact him for clarification or additional evidence." Pl.'s Mem. at 6 (emphasis in original) (quoting former 20 C.F.R. § 404.1512(e)(1)).[2]

A.    Medical Source Statement

The ALJ has a duty to explore all relevant facts and inquire into issues necessary for adequate development of the record, and cannot rely on the evidence submitted by the claimant when that evidence is inadequate. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). This duty generally includes requesting a medical source statement which is a "a medical opinion[] submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or

---

[2]    20 C.F.R. § 404.1512 was amended on 23 February 2012 (effective 26 March 2012) and section (e) now concerns the obtaining of consultative examinations. *See* 77 Fed. Reg. 10650 (explaining "[w]e are modifying the requirement to recontact your medical source(s) first when we need to resolve an inconsistency or insufficiency in the evidence he or she provided. Depending on the nature of the inconsistency or insufficiency, there may be other, more appropriate sources from whom we could obtain the information we need."). Section 404.1512(e)(1) formerly stated as follows:

> (e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques .
> . .

20 C.F.R. § 404.1512(e)(1)(2011).

mental abilities to perform work-related activities on a sustained basis." Soc. Sec. Rul. ("S.S.R.") 96-5p, 1996 SSR LEXIS 2, at *11, 1996 WL 374183, at *4; *see* 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6)(stating medical reports needed from acceptable medical sources "should include . . . [a] statement about what [the claimant] can still do despite [his/her] impairment(s)").

Here, Claimant contends the ALJ's reliance on Dr. Cockrell's findings was incorrect and that the ALJ should have requested a MSS from a treating source. *Id.* Claimant provides no facts or analysis in support of his criticisms of the ALJ's development of the record, citing only 42 U.S.C. § 423(d)(5)(B), which provides that "[i]n making any determination the Commissioner [] shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic test [sic], necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis." First, the court observes that Claimant bears the initial burden of presenting medical evidence of his impairment. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner . . . may require."); 20 C.F.R. §§ 404.1512(c), 416.912(c) (explaining it is the claimant's burden to furnish the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations). Indeed, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his [or her] own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Moreover, because Claimant was represented by counsel, the ALJ may presume that he presented his best case. *See Aytch v. Astrue*, 686 F. Supp. 2d 590, 599 (E.D.N.C. 2010) ("[W]hen an applicant for social security benefits is represented by counsel the [ALJ] is entitled to assume that the applicant is

10

making his strongest case for benefits.") (quoting *Johnson v. Chater*, 969 F. Supp. 493, 509 (N.D. Ill. 1997)).

Second, the absence of a MSS does not, in itself, render the record incomplete. 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6) ("Although [the Commissioner] will request a medical source statement about what [a claimant] can still do despite [his/her] impairment(s), the lack of the medical source statement will not make the report incomplete."). Nevertheless, assuming *arguendo* that the medical record is incomplete, Claimant has failed to allege or demonstrate that inclusion of further documentation would change the outcome of the case. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994). Rather, Claimant must provide a factual foundation upon which the court can perceive a gap in the evidentiary record that is prejudicial to Claimant. *See Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980) (noting an ALJ's failure to fully and fairly develop the record is only appropriate only if "such failure is prejudicial to the claimant"). "To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (internal quotation & citation omitted); *see also King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) (explaining prejudice results where the ALJ's decision "might reasonably have been different had that evidence been before him when his decision was rendered"). Here, Claimant points to no evidentiary gaps that resulted in unfairness or prejudice to Claimant. Indeed, Claimant makes no reference to the existence of additional evidence that might have altered the result of the ALJ's decision.

11

It is evident from the ALJ's decision that she obtained the relevant evidence, including records from Claimant's treating sources as well as opinions from state agency consultants, and conducted a careful examination thereof and, as explained in detail below, cited substantial evidence in the record supporting her RFC determination. (R. 21). Indeed, after recounting records from treating and non-treating sources, the ALJ provided a detailed rationale – spanning almost one page – as to her findings regarding Claimant's exertional and postural limitations. (R. 21). Moreover, the ALJ explained her reasoning for according Dr. Cockrell's opinion "great weight." (R. 20). In particular, upon noting Dr. Cockrell's opinion that Claimant "could probably significantly improve his symptoms of back pain and delay or avert hip replacement with significant weight loss through proper diet, exercise, and a regular stretching program," the ALJ found this opinion "consistent with the record as a whole, which shows, for example, that the claimant is obese and experiences symptoms of pain, but also moves his extremities well and is able to ambulate without use of an assistive device." (R. 20, 245, 273, 336). The ALJ also questioned Claimant at the hearing about his reasons for not working and the impact of his impairments on his daily life. Thus, the record before the ALJ contained adequate information for the ALJ to make an RFC finding; thus, this court cannot conclude that the ALJ erred by failing to obtain an MSS. *See Skinner v. Astrue*, 478 F.3d 836, 843-44 (7th Cir. 2007) (holding that the ALJ did not err by failing to request a MSS because the evidence in that case was adequate to determine whether the claimant was disabled and the ALJ's "decision not to obtain an MSS . . . did not render the record incomplete"); *see also Kendrick v. Shalala*, 998 F.2d 455, 457 (7th Cir. 1993) ("[I]t is always possible to do more. How much evidence to gather is a subject on which district courts must respect the [Commissioner's] reasoned judgment.").

12

B.    Dr. Larabee's opinion

Claimant contends the ALJ "was required to re-contact" Dr. Larabee for clarification or additional evidence. Claimant overstates the ALJ's duty. While "the ALJ must fully and fairly develop the record so that a just determination of disability may be made, . . . the ALJ is not required to function as the claimant's substitute counsel." *Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) Moreover, the ALJ's duty to develop the record "does not permit a claimant, through counsel, to rest on the record – indeed, to exhort the ALJ that the case is ready for decision – and later fault the ALJ for not performing a more exhaustive investigation." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008); *see also* 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1512(d). During the hearing before the ALJ, Claimant's counsel did not indicate or suggest to the ALJ that any medical records from Dr. Larabee were missing from the administrative record, nor did counsel ask for the ALJ's assistance in obtaining any additional medical records. (R. 56-57). Additionally, Claimant has failed to demonstrate how further information from Dr. Larabee might reasonably have changed the ALJ's determination. *See Smith v. Barnhart*, 395 F. Supp. 2d 298, 305 (E.D.N.C. 2005) (the claimant proffered to the court an actual report from the doctor in question); *see also Stahl v. Astrue*, No. 2:07-CV-19, 2007 U.S. Dist. LEXIS 99446, at *16, 2008 WL 2565895, at *6 (N.D. W. Va. Nov. 1, 2007) (finding claimant failed to demonstrate how an "updated" medical opinion may have reasonably changed the ALJ's determination). Finally, as discussed previously, the record contains sufficient evidence supporting the ALJ's RFC decision. Accordingly, the court finds that documentation as presented in the administrative record was sufficient to allow the ALJ to make an informed decision.

13

## II.    The ALJ's RFC is supported by substantial evidence.

Claimant contends the ALJ's RFC finding omitted the following critical limitations: "significant fatigue and lack of concentration caused by [Claimant's] narcotic medication," the ability to perform only simple, routine, repetitive work with limited public contact and the lack of range of motion in Claimant's left ankle. Pl.'s Mem. at 6-7.

An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *5, 1996 WL 374184, at *1. The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *14 , 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 SSR LEXIS 5, at *21, 1996 WL 374184, at *7. Furthermore, the RFC assessment must "consider and address medical source opinions," and if it "conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." S.S.R. 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7. The ALJ's decision indicates that he considered

14

Claimant's mental and physical impairments in totality before determining Claimant maintained the RFC to perform less than the full range of light work. As noted earlier, the ALJ's opinion provides a detailed review of Claimant's medical records, citing medical facts and underlying evidence as to each impairment.

A.     Medication side-effects

With respect to Claimant's alleged medication side effects, the ALJ acknowledged Claimant's testimony that he had "been placed on a lower dosage of narcotic pain medication due to side effects of nausea, dizziness and drowsiness." (R. 18). In considering Claimant's complaint of fatigue, the ALJ acknowledged Claimant's testimony that he must lie down due to drowsiness caused by Oxycodone. (R. 19, 42-43). However, the ALJ did not find Claimant's testimony fully credible in light of treatment notes of Gilberto P. Navarro, M.D., dated 12 October 2009, 9 November 2009 and 7 December 2009, which "consistently note[d] no fatigue." (R. 19, 335, 337, 341). Claimant states "'[b]y consistently,' the ALJ meant three times," without further comment. Pl.'s Mem. at 7. To the extent Claimant faults the ALJ for relying on a evidence over a limited time period, Claimant's argument is without merit. The ALJ properly reviewed the medical records of Dr. Navarro in formulating Claimant's RFC and in evaluating Claimant's credibility and Claimant points to not other record contradicting Dr. Navarro's recordation of Claimant's subjective symptoms.

The ALJ did not expressly acknowledge Claimant's testimony that "[i]t just felt like I was out of it" in response to whether he was having trouble concentrating. (R. 43). However, to the extent the ALJ erred, such error is harmless. Claimant points to no evidence documenting concentration difficulties or an inability to work as a result of this alleged side effect. Rather, Claimant erroneously implies that his side effect allegations can, standing alone, constitute conclusive evidence of

15

disability. *See* 20 C.F.R. §§ 404.1529, 416.929 ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ."); *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994) ("a subjective allegation of pain, standing all alone, shall not be conclusive evidence of disability").

B.    Mental RFC Assessment

Next, Claimant faults the ALJ for not adopting the findings by state agency consultants Nancy Herrera, Ph.D., and Anthony G. Carraway, M.D. Pl.'s Mem. at 7; (R. 311-15; 316-19). In particular, Claimant contends the ALJ erred in not adopting Dr. Herrera's opinion that Claimant is limited to performing simple, routine and repetitive work with limited public contact.[3] Pl.'s Mem. at 7. Claimant contends Dr. Herrera's opinion is supported by (1) Dr. Carraway's examination findings, including Claimant's Global Assessment of Functioning ("GAF") score of 57[4] and his

---

[3]    Claimant suggests further that the ALJ's RFC finding erroneously omitted the limitations identified in Section 1 of the MRFC form completed by Dr. Herrera. *See* Pl.'s Mem. at 8. As previously explained by this court, however,

> [s]ection I [of the MRFC form] is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment . . . . Section III - Functional Capacity Assessment, is for recording the mental RFC determination. It is in *this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings.*

*Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 U.S. Dist. LEXIS 45523, at *35, 2011 WL 1599679, at *12 (E.D.N.C. Mar. 23, 2011), adopted, 2011 U.S. Dist. LEXIS 45580, 2011 WL 1599667 (E.D.N.C., Apr. 26, 2011) (emphasis in original) (quoting POMS § DI 24510.060(B)(2)(a) & (4)(a), http://policy.ssa.gov/poms.nsf/lnx/0424510060 (last visited Jun. 28, 2012)).

[4]    The GAF scale ranges from zero to one-hundred and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV"), 32 (4th ed. 1994). A GAF score between 51 and 60 indicates "[m]oderate symptoms [or] moderate difficulty in social, occupational,

below average intelligence as evidenced by his inability to respond properly as to the number of items in a dozen and the number of inches in a foot (R. 313-14) and (2) a June 1995 operative report indicating not only that Claimant underwent an osteotomy and tendon transfer, as acknowledged by the ALJ, but also that Claimant suffered from mental retardation. Pl.'s Mem. at 7; (R. 15, 227). In reviewing evidence regarding Claimant's mental impairment of depression, the ALJ noted the following:

> During his hearing, the claimant testified to having no mental impairment. The lack of mental health treatment in the record supports the claimant's testimony. The records shows that the claimant was seen only twice by Health Services Personnel in July 2006. The claimant was noted as not showing for two additional appointments. Additionally, the treatments note[] of [Dr.] Navarro, dated October 12, 2009, show[s] that the claimant responded affirmatively when asked whether he felt down, depressed or hopeless. However, the claimant was noted as having no thoughts of hurting himself. Subsequent treatment notes of Dr. Navarro note no depression, anxiety or suicidal ideation. Furthermore, the record does not indicated that claimant was prescribed medication for depression or had a psychiatric hospitalization.

(R. 16) (internal citations omitted). As a result of "medical evidence showing very little mental health treatment and the claimant's testimony alleging no mental impairment," the ALJ assigned "little weight" to the opinions of state agency consultants Anthony G. Carraway, M.D., and Nancy Herrera, Ph.D. (R. 21, 316-33, 311-15).

Claimant's argument as to his mental impairments is essentially an invitation to the court to reweigh the evidence. The court's duty is to determine if substantial evidence supports the ALJ's conclusions – not to sit *de novo* as the adjudicator. *See Mastro*, 270 F.3d at 176. The ALJ's rationale for discounting the opinions of Drs. Herrera and Carraway is supported by both treatment records and Claimant's testimony. While Claimant's counsel faults the ALJ for relying on Claimant's

_____

or school functioning." *Id.*

testimony, stating "a person with [a] mental impairment is not the proper person to say whether he is mentally impaired" and opining further that "to the extent that [he] deferred to [Claimant's] inexpert self-appraisal at the hearing, he was in error," Pl.'s Mem. at 8 n.2, the ALJ "is not required to function as the claimant's substitute counsel . . . ." *Bell v. Chater*, No. 95-1089, 1995 U.S. App. LEXIS 14322, at *12, 1995 WL 347142, at *4 (4th Cir. Jun. 9, 1995) (unpublished table decision) (citing *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994)) (internal citations and quotations omitted). The opinions of Drs. Carraway and Herrera are dated September 2008 and October 2008, respectively, and thus predate the January 2010 hearing by more than one year. Thus, Claimant's counsel had adequate time to review the record prior to the hearing as well as an opportunity at the hearing to elicit further testimony regarding Claimant's mental impairment. "Although the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, . . .[u]ltimately, Claimant carries the burden of establishing a prima facie entitlement to benefits . . . and bears the risk of nonpersuasion. *Bell*, 1995 U.S. App. LEXIS 14322, at *12, 1995 WL 347142, at *4 (internal citations and quotations omitted); *see also* 20 C.F.R. §§ 404.1512(c), 416.912(c) ("[Claimant] must provide evidence . . . showing how the impairment(s) affects . . . functioning . . . ."). Moreover, while Claimant now seeks to fault the ALJ for a duty that should have been performed by Claimant's counsel, as noted previously, an ALJ is entitled to assume that a claimant represented by counsel is making his strongest case for benefits. *See Aytch*, 686 F. Supp. 2d at 599. The court finds Claimant's argument without merit.

C.     Claimant's left ankle limitation

Finally, relying on Dr. Cockrell's finding that Claimant's left ankle range of motion was 0 in all areas except dorsiflexion which was 10, Claimant contends he has "no range of motion in his left

18

ankle" and faults the ALJ for not including this limitation in the RFC assessment.[5] Pl.'s Mem. at 8;

(R. 248). Claimant does not indicate how the limited range of motion finding translates into a work

limitation, stating only that it "is a significant limitation, especially if one is considering whether the

claimant can do light or sedentary work." *Id.*

The ALJ's decision indicates she reviewed at length the medical records from Duke

University Medical Center as well as the opinions by state agency consultants, Drs. Cockrell and

Gardner. (R. 15, 18-19, 21). Moreover, in formulating Claimant's RFC, the ALJ relied on findings

as to Claimant's left foot and ankle range of motion by both Drs. Cockrell and Navarro, as well as

Claimant's testimony. In particular, the ALJ explained as follows:

> Support for the claimant's ability to stand or walk up to 4 hours in an 8-hour workday
> with the use of a hand-held assistive device includes Dr. Cockrell's finding that the
> claimant had a steady gait without the use of an assistive device, the treatment notes
> of Dr. Navarro showing that the claimant has experienced . . . limited range of
> motion in his knee and ankle and painful range of motion in his foot, but moved his
> extremities well, and the claimant's testimony that walking is uncomfortable and he
> was using a cane for three months prior to his hearing due to hip and foot problems.
> . . .
> Support for the claimant's ability to occasionally balance, stoop, climb ramps and
> stairs and push and pull with this left lower extremity includes . . . Dr. Navarro's
> treatment notes showing that the claimant has experienced limited range of motion
> in his ankles and knees . . . and painful range of motion in his foot, but moves his
> extremities well.
> . . .
> Support for the claimant's inability to crawl and climb ladders, ropes, or scaffolds
> includes the medical evidence showing that claimant . . . has experienced limited
> range of motion in his ankle and knee. . . .

(R. 21). In determining Claimant's RFC, the ALJ partially discounted the physical RFC assessment

---

[5]    In support of his range of motion limitation, Claimant cites also (1) a 1993 treatment record
from Duke University Medical Center indicating Claimant had "marked limitation of subtalar
motion" and "20 degrees of dorsiflexion at the ankle" (R. 206) and (2) a physical RFC assessment
by state agency non-examining consultant Robert Gardner, M.D., dated 2 July 2008, which cites Dr.
Cockrell's finding (R. 256). Pl.'s Mem. at 8.

19

by Dr. Gardner, which included the findings that Claimant could push or pull (which includes the operation of foot controls) without limitation and could frequently climb stairs, balance, kneel and crawl. (R. 250-51). The ALJ found Claimant's symptoms of pain and decreased range of motion warranted greater limitations. (R. 21). Claimant does not explain how the limited range of ankle motion impacts his work-related abilities in a manner different from that found by the ALJ and cites no additional medical evidence documenting the impact of the limited range of motion on his ability to perform work-related functions. The ALJ thoroughly evaluated the medical evidence, including findings regarding Claimant's ankle, and her RFC finding as to the limitations caused thereby is supported by substantial evidence.

As described earlier, the ALJ's opinion provides a detailed review of Claimant's medical records, citing medical facts and underlying evidence as to each impairment. In addition, the RFC assessment takes account of Claimant's testimony concerning pain to the extent that this testimony proved consistent with the objective medical evidence before the ALJ. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting the ALJ need not accept a claimant's subjective evidence to the extent it is inconsistent with the available evidence). Moreover, while state agency consultants found Claimant could perform the full range of light work with some postural limitations, the ALJ disagreed, finding Claimant limited to up to 4 hours of walking or standing with the use of a hand-held assistive device and limited with respect to all postural requirements. (R. 21, 250-51, 256, 304-05). Also, the ALJ's RFC assessment includes consideration of opinions by Drs. Larabee, Cockrell, Carraway and Herrera and explanations for the adoption of Dr. Cockrell's opinion but not that of Drs. Larabee, Carraway and Herrera. (R. 20-21). While Claimant contends the RFC finding is not supported by substantial evidence based on an erroneous evaluation of the opinions of Drs. Larabee,

20

Carraway and Herrera, as detailed above, the court finds the ALJ's consideration of these opinions was proper.

Based on the foregoing, this court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained her findings and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

### III. The ALJ properly relied on the testimony of the vocational expert.

Claimant contends the ALJ improperly relied on the testimony of the VE for three reasons. First, Claimant argues that the hypothetical posed to the VE did not adequately reflect Claimant's RFC in that it did not include Claimant's "significant mental limitations" or the lack of range of motion is his left ankle. Pl.'s Mem. at 6. Second, Claimant contends the VE's testimony regarding two of the positions identified as accommodating Claimant's RFC conflicted with DOT; thus, the ALJ erred in relying on said testimony. *Id.* at 3. Third, Claimant contends the ALJ failed to elicit testimony from the VE about the number of jobs existing in North Carolina for two representative positions "*after* discounting for the erosion caused by all of [Claimant's] limitations." *Id.* at 4 (emphasis in original).

First, Claimant contends the VE's testimony was irrelevant as it was based on a faulty hypothetical. Pl.'s Mem. at 5. The purpose of a VE is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). As such, hypothetical questions posed to a VE must accurately set forth all of a claimant's physical and mental impairments. *Id.* "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot

21

constitute substantial evidence to support the Secretary's decision." *Pratt v. Sullivan*, 956 F.2d 830, 836 (8th Cir. 1992). The corollary to this rule is that the ALJ need only include in her questioning those impairments which the ALJ has found to be credible. *See Johnson*, 434 F.3d at 659 (holding a hypothetical valid because it adequately reflected claimant's characteristics as found by the ALJ); *Ehrhart v. Sec'y, Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) (noting "the hypothetical question posed by the ALJ was proper because it reflected [claimant's] impairments to the extent that the ALJ found them supported by evidence in the record"). If the ALJ does not believe that a claimant suffers from one or more claimed impairments, and substantial evidence supports that conclusion, then the ALJ does not err if she fails to include those impairments in her questioning of the VE. *Sobania v. Sec'y, Health & Human Servs.*, 879 F.2d 441 (8th Cir. 1989) (explaining "the hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ"); *McPherson v. Astrue*, 605 F. Supp. 2d 744, 761 (S.D. W. Va. 2009) ("The ALJ is under no duty to present the VE with hypothetical questions that include [claimant's] claimed impairments if the ALJ has found those impairments to be not severe or not credible.").

Here, the hypothetical posed to the VE incorporated Claimant's RFC as determined by the ALJ and the ALJ precisely set out Claimant's impairments. (R. 472); *see Walker*, 889 F.2d at 50. While Claimant contends that the ALJ should have included additional limitations, the ALJ's determination that Claimant was restricted by only those limitations that are reflected in the hypothetical is supported by substantial evidence, as explained above. Accordingly, Claimant's argument as to this issue is without merit.

Second, Claimant contends the assembler II and electronic assembler positions "involved 'benchwork,' and thus, frequent use of both hands" – a requirement not possible for Claimant in light

22

of his dependence on an assistive device. Pl.'s Mem. at 3 (citing *Ray v. Astrue*, 718 F. Supp. 2d 65 (D.D.C. 2010)).[6] That is, Claimant implies the VE's testimony conflicted with the DOT. Pursuant to S.S.R. 00-4p, the ALJ must "inquire, on the record, as to whether or not" the "[o]ccupational evidence provided by a VE" is "consistent with the occupational information supplied by the DOT." S.S.R. 00-4p, 2000 SSR LEXIS 8, at \*5, 2000 WL 1898704, at \*2; *see Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) (explaining the ALJ's duty to develop the record includes "[q]uestioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations."). Here, the VE testified that the positions of assembler II, assembler of small parts and electronics worker were "sample[s] of light, unskilled bench type work that would accommodate" a sit/stand limitation as well as the use of an assistive device. (R. 53-53). The ALJ then inquired, on the record, as to whether the occupational evidence provided by the VE was consistent with the occupational information supplied by the DOT, to which the VE responded in the affirmative. (R. 53). Accordingly, the record demonstrates that the ALJ satisfied her obligation under S.S.R. 00-4p.[7]

---

[6] In *Ray*, the VE testified that the use of a hand-held device could preclude an individual's ability to perform sedentary or light work, depending on how often the individual would need to stand as part of the sit/stand option. 718 F. Supp. 2d at 73. It is unclear how *Ray* supports Claimant's position as the court in *Ray* did not reach the issue of whether the ALJ properly considered the VE's testimony because it found the ALJ's RFC was not supported by substantial evidence. *Id.* at 77. Nevertheless, as explained below, the court finds the ALJ properly relied on the VE's testimony.

[7] Furthermore, while Claimant contends he can only use one hand frequently but not both – a requirement for benchwork – as Defendant points out, "frequently" is defined in the DOT's description for all three positions at issue as an "[a]ctivity or condition exist[ing] from 1/3 to 2/3 of the time" in an 8-hour day. *See* DOT 723.684-018 Assembler II, 1991 WL 679521; DOT 706.684-022 Assembler, Small Products I, 1991 WL 679050 23.684-018; DOT 726.687-010 Electronics Worker, 1991 WL 679633. The ALJ found Claimant must be allowed to alternate between sitting and standing every 30 minutes, for no more than five minutes at a time. (R. 17).

23

Finally, Claimant contends the ALJ failed to elicit testimony as to whether Claimant's limitations eroded the unskilled light occupational base to such an extent that there no longer existed work that Claimant could perform. Pl.'s Mem. at 4. Claimant argues further that "it is highly unlikely that the VE even *intended* these numbers to reflect the jobs *remaining* in these occupations *after* discounting for [Claimant's] limitations." *Id.* (emphasis in original). Claimant's argument evidences a complete misunderstanding of the regulations governing step five of the sequential evaluation process.

Once a claimant successfully demonstrates that he cannot perform his past relevant work, the burden shifts to the Commissioner to show that the claimant, based on his age, education, work experience and RFC, can perform other substantial gainful work. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also Pass*, 65 F.3d at 1203. The ALJ may carry this burden through the use of the Grids if a claimant has no nonexertional impairments that prevent her from performing the full range of work at a given exertional level. *Coffman*, 829 F.2d at 518; *Gory v. Schweiker*, 712 F.2d 929, 930-31 (4th Cir. 1983). However, an ALJ may not rely exclusively upon the Grids in cases involving two types of claimants: those who suffer a disability present in the absence of physical exertion and as in this case, those who suffer in exertion a disability that restricts their ability to perform a full range of work at a given exertional level. *Hammond,* 765 F.2d at 425-26. In both such cases, an ALJ must go beyond the Grids and "produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant." *Id.* at 426; *see Gory*,

---

Thus, as Claimant concedes, in an hour's time, Claimant must be allowed to stand with a cane and thus give up the use of one hand for no more than 10 minutes. Claimant does not explain how this limitation prevents him from performing the handling, reaching and fingering requirements of the representative positions on a frequent basis.

712 F. 2d at 931 ("If only nonexertional limitations are claimed, the [Grids] do not direct a conclusion of either disability or non-disability."); *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983) ("where the claimant's impairment is nonexertional . . . the [G]rids' [r]ules are not conclusive, and full individualized consideration must be given to all relevant facts of the case.").

In the instant case, the ALJ, noting that Claimant's ability to perform light work "has been impeded by additional limitations," relied on VE testimony "[t]o determine the extent to which these limitations erode the unskilled light occupational base." (R. 22-23). The hypothetical posed to the VE incorporated Claimant's RFC as determined by the ALJ and the ALJ precisely set out Claimant's limitations as a result of his impairments. (R. 52-53); *see Walker*, 889 F.2d at 50. The VE testified that jobs existed in the national economy that such an individual could perform, despite the limitations described. (R. 53, 56). The ALJ then asked the VE to advise of any conflict between his testimony and the DOT and he indicated none. (R. 53); *see* S.S.R. 00-4p, 2000 SSR LEXIS 8, at *5, 2000 WL 1898704, at *2; *Haddock*, 196 F.3d at 1091. As the VE identified positions existing in significant numbers that Claimant can perform, the VE's testimony thus provided substantial evidence for the ALJ's decision that Claimant can perform alternate work.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-30] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-32] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District

25

Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 28th day of June, 2012.

Robert B. Jones, Jr.
United States Magistrate Judge