IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:11-CV-21-FL

| | |
|---|---|
| WENDELL GATLING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter comes before the court on the parties' cross motions for judgment on the pleadings (DE ## 30, 32). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr. entered a memorandum and recommendation ("M&R") (DE # 36) wherein he recommends that the court deny plaintiff's motion, grant defendant's motion, and uphold the final decision of the Commissioner of Social Security ("Commissioner"). Plaintiff timely filed objections to the M&R, to which defendant responded. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge.

## BACKGROUND

On April 29, 2008, plaintiff filed an application for a period of disability and disability insurance benefits, alleging a disability onset date of November 17, 2007. A hearing was held before

an Administrative Law Judge ("ALJ") on January 21, 2010. Plaintiff was represented by counsel, and a vocational expert ("VE") testified. On April 28, 2010, the ALJ issued a decision denying plaintiff's request for benefits. The Appeals Council denied plaintiff's request for review on April 1, 2011. Plaintiff filed his complaint in this court on May 13, 2011, seeking review of the final administrative decision.

A detailed summary of the procedural and factual history of the case is found in the M&R. See M&R 4-7. Where plaintiff does not object to this portion of the M&R, the factual history of the case as set forth in the M&R is incorporated here by reference.

## DISCUSSION

I.   Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and

2

the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1)(C). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 17, 2007, the alleged onset date of his disability. The ALJ then found at step two that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the hips bilaterally, clubfoot, and obesity. However, at step three the ALJ further determined that these impairments were not sufficiently severe to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

3

Prior to proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") and found that plaintiff had the ability to perform light work with the following limitations: ability to crouch for twenty percent of an 8-hour workday; stand or walk for up to 4 hours in an 8-hour workday with the use of a hand-held assistive device; sit for up to 6 hours in an 8-hour work day and alternate sitting and standing every 30 minutes for no more than 5 minutes; occasionally push and pull with the left lower extremity; occasionally balance, stoop and climb ramps and stairs; but with no climbing ladders, ropes or scaffolds, and no crawling. In making this assessment, the ALJ found plaintiff's statements about plaintiff's limitations not fully credible. The ALJ further found that plaintiff was unable to perform any past relevant work. However, at step five, upon considering plaintiff's age, education, work experience, and RFC, the ALJ concluded that jobs exist in significant numbers in the national economy that plaintiff could perform. The ALJ therefore concluded that plaintiff had not been under a disability, as defined in the Social Security Act, from November 17, 2007, through the date of her decision.

II. Analysis

A. Mental Impairments

Plaintiff first argues that the magistrate judge erred in upholding the ALJ's decision to give "little weight" to the opinions of Dr. Carraway, the consultative examiner, and Dr. Herrera, the nonexamining state agency mental health professional. (Obj. 1-5). Dr. Carraway, a psychiatrist who conducted a mental status examination of plaintiff, opined that plaintiff's ability to understand, retain and perform instructions is mildly to moderately impaired, and that he had a mild to moderate impairment in short term and intermediate memory. (R. 314). Dr. Herrera, a medical consultant who reviewed the evidence in the record, opined in a mental RFC assessment form that plaintiff has

moderate limitations in concentration, persistence and pace, and is limited to performing simple, routine and repetitive work with limited public contact. (R. 316-318). In considering these opinions, the ALJ reasoned that "the limitations expressed in the opinions are not consistent with the record as a whole, including the medical evidence showing very little mental health treatment and the claimant's testimony alleging no mental impairment." (R. 21). Accordingly, the ALJ did not include any mental health functional limitations in her RFC determination. (Id.).

Although the opinions of examining physicians and state agency physicians generally are accorded considerable weight, "if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). In this case, the ALJ did not err in according little weight to the opinions of Dr. Carraway and Dr. Herrera on the basis that they were not consistent with the record as a whole.

In reviewing the evidence in the record regarding mental impairment, the ALJ noted that the plaintiff testified during the hearing that he had no mental impairment. (R. 16). In fact, counsel for plaintiff confirmed that mental impairment was not at issue in the case:

> ALJ: Are you alleging any mental impairment?
> ATTY: I, Judge, I know we have a consultative examination from Dr. Caraway [sic] on that. I don't believe we have any other treatment besides that.
> CLMT: I don't –
> ATTY: What?
> CLMT: – I don't understand what you're saying.
> ATTY: Any, any mental impairments, depression, anxiety, anything like that?
> CLMT: No.
> ATTY: No, I don't think so. No, Judge.
> ALJ: Okay. All right, go ahead.

(R. 33-34). While the "ALJ has a duty to explore all relevant facts and inquire into the issues

5

necessary for adequate development of the record," the claimant ultimately bears "the burden of establishing a prima facie entitlement to benefits." Aytch v. Astrue, 686 F. Supp. 2d 590, 599 (E.D.N.C. 2009) (quoting Bell v. Chater, No. 95-1089, 1995 U.S. App. LEXIS 14322, *12 (4th Cir. June 9, 1995)). As such, "the ALJ has no duty to consider an impairment absent an allegation of such impairment and record evidence of a resultant limitation or restriction." Id. Moreover, where plaintiff is represented by counsel before the ALJ, the ALJ may properly concentrate on analyzing the impact of those impairments highlighted by counsel. See id.; see also Clark v. Shalala, 28 F.3d 828, 830 (8th Cir. 1994) (stating the ALJ is "not required to function as the claimant's substitute counsel"); Johnson v. Chater, 969 F. Supp. 493, 509 (N.D. Ill. 1997) (where plaintiff's "own testimony significantly downplayed his earlier problems with substance abuse and depression" the ALJ "properly concentrated on what [plaintiff] and his counsel considered to be the important facts bearing on disability"). Accordingly, it was not improper for the ALJ to take into account plaintiff's testimony and counsel's statements at the hearing in giving little weight to the opinions of Dr. Herrera and Dr. Carraway.

In addition, apart from plaintiff's testimony, the ALJ considered all the evidence of mental impairment in the record, and properly determined that the lack of mental health treatment supported a determination that plaintiff did not suffer functional limitations due to mental health impairments. "[A]n unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility." Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) (Luttig, J., concurring). In Mickles, for example, the Fourth Circuit determined that "it was not improper for the ALJ to consider the level and type of treatment [the plaintiff] sought and obtained in determining what

weight to accord her allegations of constant disabling pain." Id.

In this case, while recognizing that plaintiff was diagnosed by state health services personnel with depression in 2008, and that plaintiff had expressed to a treating physician that he felt depressed, (R. 16; see R. 258-267, 338), the ALJ noted that no medication had ever been prescribed to plaintiff for depression and he never had a psychiatric hospitalization. (R. 16). Plaintiff does not contend that he ever received treatment for depression or any other mental impairments noted by Dr. Carraway or Dr. Herrera. Accordingly, this absence of mental health treatment in the record supports the ALJ's decision to give little weight to the functional limitations based upon plaintiff's mental impairments.

Plaintiff faults the magistrate judge and ALJ for focusing on the lack of treatment for depression, where plaintiff contends that the opinions of Dr. Carraway and Dr. Herrera pertain to impairments in the areas of "concentration, persistence or pace." (Obj. 3). Plaintiff fails to note, however, that the ALJ's discussion of depression incorporated an analysis of four broad functional areas set out in the disability regulations for evaluating mental disorders, one of which is plaintiff's "concentration, persistence or pace." (R. 16); see 20 C.F.R. § 404.1520a(c)(3). Indeed, in considering this functional area, the ALJ referred to the findings in Dr. Carraway's report and noted that Dr. Carraway found that plaintiff's "attention and concentration were intact." (Id. citing R. 311-315). "For example, the claimant was noted as having no misses on random letter testing." (Id.). In this respect, Dr. Carraway's examination report, considered in conjunction with the lack of other evidence in the record documenting concentration difficulties or an inability to work as a result of such difficulties, supported the ALJ's conclusion that plaintiff's ability to work was not limited by plaintiff's concentration, persistence or pace. Cf. Kearse v. Massanari, 73 Fed. Appx. 601, 604 (4th

7

Cir. 2003) (holding that although medical reports documented deficiencies of concentration, persistence, or pace, the evidence did not show the degree to which these problems would limit plaintiff's ability to work, thus ALJ was not required to include such deficiencies in the hypothetical offered to vocational expert)

Plaintiff also contends Dr. Herrera's mental RFC assessment is supported, rather than contradicted by, evidence in the record. (Obj. 4). Plaintiff cites a note by an orthopaedic surgeon, when plaintiff was sixteen, stating that plaintiff "has mental retardation and a history of cerebral palsy." (R. 227). But, as plaintiff notes, this physician cites no source for this statement. (See id.) Moreover, the surgeon's statement is directly contradicted by a statement by Dr. Herrera that plaintiff's school records "do not document any history of mental retardation." (R. 332). Although Dr. Herrera notes that school records instead document "LD," presumably a reference to learning disability, neither Dr. Herrera nor plaintiff points to any documentation describing the nature of this learning disability or how it impacts plaintiff's functioning. (See R. 332). Finally, although plaintiff claims that Dr. Carraway's report demonstrates that plaintiff is "functionally illiterate," (Obj. 4), Dr. Carraway's report does not so state. (See R. 313).

Even assuming, however, that the evidence cited by plaintiff documents a history of mental impairments, particularly related to intellectual ability, this evidence does not support a finding that those mental impairments caused functional limitations that impacted plaintiff's ability to work. See Kearse, 73 Fed. Appx. at 604. Even where there is some evidence of mental impairments in the record, the plaintiff still "must provide evidence . . . showing how the impairment affects functioning." 20 C.F.R. § 416.912(c). "The duty to evaluate a claimant's symptoms . . . does not extend to guessing what the impact of those symptoms may be." Aytch, 686 F. Supp. 2d at 599

8

(quoting Wimberly v. Barnhart, 128 Fed. Appx. 861, 864 (3d Cir. 2005)). Rather, the burden is on the claimant to furnish "evidence supporting the existence of a condition and the effect of that condition on the claimant's ability to work on a sustained basis." Id. In sum, where plaintiff has not provided evidence supporting functional limitations asserted by Dr. Herrera and Dr. Carraway, the ALJ properly gave little weight to these opinions and did not include such limitations in her RFC assessment.

B. Treating Physician

Plaintiff next objects to the magistrate judge's consideration of whether the ALJ erred by failing to obtain a Medical Source Statement or other further information from plaintiff's treating physician, Dr. Larabee. (Obj. 7-13). As the magistrate judge noted, plaintiff reported to Dr. Larabee in 2008 with complaints of increased pain and discomfort in his back, an inability to stand for long periods of time, and intermittent numbness and tingling to the thighs. Referencing prior surgeries, Dr. Larabee opined that plaintiff is "unable to be gainfully employed," and "unable to work at this time," but Dr. Larabee noted no physical examination findings, and no other progress reports for Dr. Larabee appear in the record." (R. 240-41). Plaintiff does not dispute that the opinion of Dr. Larabee, resting on the ultimate issue of ability to work, is inadequate to support a disability determination. See 20 C.F.R. §§ 404.1527(e), 416.927(e). Rather, plaintiff contends that because Dr. Larabee's report was inadequate, the ALJ was required to obtain a Medical Source Statement or further information from Dr. Larabee. Plaintiffs' argument fails for two reasons.

First, the ALJ was not required to obtain a Medical Source Statement or further information from Dr. Larabee because there was already substantial evidence in the record from which the ALJ could make a determination as to whether plaintiff was disabled. As this court has observed

previously, "[t]he regulations clearly state that an ALJ's duty to recontact a treating source arises only when the evidence as a whole is inadequate to determine the issue of disability." Parker v. Astrue, 792 F. Supp. 2d 886, 895 (E.D.N.C. 2011) (citing 20 C.F.R. §§ 404.1512(e), 404.1527(c)(2), 416.912(e), 416.927(c)(2)). Where the record is "sufficient for the ALJ to make a disability determination," there is no need for the ALJ to recontact the treating physician for more information. Id.; see Skinner v. Astrue, 478 F.3d 836, 844 (7th Cir. 2007) (where the "record contained adequate information for the ALJ to render a decision," the ALJ's "decision not to obtain a MSS [Medical Source Statement] or further information from [the treating physician] did not render the record incomplete").

In this case, as noted by the magistrate judge, substantial evidence in the record supported the ALJ's disability determination:

> It is evident from the ALJ's decision that she obtained the relevant evidence, including records from Claimant's treating sources as well as opinions from state agency consultants, and conducted a careful examination thereof and, as explained in detail below, cited substantial evidence in the record supporting her RFC determination. (R. 21). Indeed, after recounting records from treating and non-treating sources, the ALJ provided a detailed rationale - spanning almost one page - as to her findings regarding Claimant's exertional and postural limitations. (R. 21). Moreover, the ALJ explained her reasoning for according Dr. Cockrell's opinion "great weight." (R. 20). In particular, upon noting Dr. Cockrell's opinion that Claimant "could probably significantly improve his symptoms of back pain and delay or avert hip replacement with significant weight loss through proper diet, exercise, and a regular stretching program," the ALJ found this opinion "consistent with the record as a whole, which shows, for example, that the claimant is obese and experiences symptoms of pain, but also moves his extremities well and is able to ambulate without use of an assistive device." (R. 20, 245, 273, 336). The ALJ also questioned Claimant at the hearing about his reasons for not working and the impact of his impairments on his daily life. Thus, the record before the ALJ contained adequate information for the ALJ to make an RFC finding....

(M&R 12). Because the record contained adequate information for the ALJ to make a determination

10

of residual functional capacity, the ALJ did not err in failing to obtain a Medical Source Statement or further information from Dr. Larabee.

Second, plaintiff has failed to demonstrate prejudice from the ALJ's failure to recontact Dr. Larabee. See Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980) (noting that an ALJ's failure to fully and fairly develop the record is an appropriate basis for remand where "such failure is prejudicial to the claimant"); Binion v. Shalala, 13 F.3d 243, 246 (7th Cir. 1994) ("Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand."). "To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result." Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000) (internal quotations omitted); see also King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) (explaining prejudice results where the ALJ's decision "might reasonably have been different had that evidence been before him when his decision was rendered").

Plaintiff contends prejudice is "plain enough" in this case, where Dr. Larabee himself opined that plaintiff cannot work because of pain symptoms. (Obj. 8). But, as already noted, Dr. Larabee's opinion that plaintiff cannot work is not evidence, but rather a determination reserved for the Commissioner that does not carry any additional evidentiary weight. See 20 C.F.R. §§ 404.1527(e), 416.927(e). Thus, this conclusory opinion itself does not provide a basis for finding that Dr. Larabee would have provided probative clinical evidence or examination findings altering the ALJ's decision.

Plaintiff also argues he has shown prejudice because a different physician, a consulting physician who did not examine plaintiff, opined that plaintiff's allegations of pain were credible. (R 256). But, similar to the unsupported opinion of Dr. Larabee, the opinion of a different physician who did not himself generate any clinical evidence or examination findings does not tend to show

Dr. Larabee would have provided such evidence altering the ALJ's decision.

Finally, plaintiff claims he has established prejudice based upon the ALJ's step one determination that plaintiff had an impairment reasonably likely to cause the pain claimed. (R. 18). This determination, however, merely leaves open the key remaining issue regarding the intensity and persistence of the pain, and the extent to which it affects plaintiff's ability to work. Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996). It does not tend to show that Dr. Larabee might have provided additional probative evidence bearing on the ultimate disability determination.

In sum, plaintiff has provided "mere conjecture or speculation that additional evidence might have been obtained," Binion, 13 F.3d at 246, and has thus not established prejudice from the ALJ's failure to recontact Dr. Larabee.

C. Vocational Expert

1. Alleged Conflict Between Occupations Identified and Cane Restrictions

Plaintiff contends the magistrate judge failed to adequately address an inconsistency between plaintiff's limitations requiring use of a cane and the occupations the vocational expert found plaintiff could perform. (Obj. at 6). The vocational expert in this case identified three assembly or "bench type work" positions that plaintiff could perform, and testified that these occupations would accommodate the limitations posited by the ALJ's hypothetical, including use of an assistive device. (R. 53-53). The magistrate judge determined that the ALJ properly inquired of the vocational expert whether the occupational evidence provided by the vocational expert is consistent with occupational information supplied by the Dictionary of Occupational Titles (DOT), and that the ALJ therefore properly relied upon the testimony of the vocational expert. (M&R 23). Plaintiff does not object to this aspect of the magistrate judge's analysis, which the court adopts as its own. Instead, plaintiff

12

objects to additional discussion by the magistrate judge regarding the underlying basis for the vocational expert's determination. (Obj. 6). In particular, after concluding that the ALJ properly relied upon the testimony of the vocational expert, the magistrate judge opined:

> Furthermore, while Claimant contends he can only use one hand frequently but not both – a requirement for benchwork – as Defendant points out, "frequently" is defined in the DOT's description for all three positions at issue as an "[a]ctivity or condition exist[ing] from 1/3 to 2/3 of the time" in an 8-hour day. ... The ALJ found Claimant must be allowed to alternate between sitting and standing every 30 minutes, for no more than five minutes at a time. (R. 17). Thus, as Claimant concedes, in an hour's time, Claimant must be allowed to stand with a cane and thus give up the use of one hand for no more than 10 minutes. Claimant does not explain how this limitation prevents him from performing the handling, reaching and fingering requirements of the representative positions on a frequent basis.

(M&R 23 n.7). Plaintiff argues that, contrary to the magistrate judge's conclusion, he did in fact explain how his cane limitation prevents him from performing the identified jobs. He argues that all of the jobs identified by the vocational expert are "assembly work" or "production work," and that such work "of course, requires the use of *both* hands," citing *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO), Section 6.01.[1] (Obj. 6). He opines that no production work employer would allow an employee to give up the use of one hand for up to 10 minutes per hour. (Id.).

As an initial matter, it is not clear the court must address this argument, where the magistrate judge previously determined that the ALJ properly inquired of the vocational expert that his testimony was consistent with the information supplied by the DOT. See Haddock v. Apfel, 196 F.3d 1084, 1087 (10th Cir. 1999) (recognizing that "an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability" where the ALJ has carried out

---

[1] The SCO is a supplement to the DOT, published by the U.S. Department of Labor. See S.S.R. No. 83-14.

its duty to inquire of the expert whether there are any inconsistencies with the DOT). Indeed, though not expressly noted by the magistrate judge, the ALJ inquired, on the record, as to whether the occupational evidence provided by the vocational expert was consistent with *both* the DOT and the SCO, to which the VE responded in the affirmative. (R. 53). As such, the ALJ was entitled to rely upon the vocational expert's testimony, and the court need not independently determine that the testimony is consistent with the DOT or the SCO. See Haddock, 196 F.3d at 1087.

Even assuming the issue is properly before the court, however, the publication plaintiff cites does not support his argument that there is a conflict between the SCO and the expert's testimony. Citing the SCO, plaintiff contends that "'Production work' of course, requires the use of both hands," and no production work employer would allow a worker to work up to ten minutes of each hour with only one hand. The SCO, however, does not state this. Rather, it states:

> **06.01. Production technology** Occupations in this group are concerned with setting up and operating machines, performing precision handwork, supervising and instructing personnel in machine use, and applying skills and knowledges of machines, techniques, and processes involved. *Skills and abilities usually required include: Knowledge of production machine setup and adjustment; reading blueprints, wiring diagrams, and other work specifications; using eyes, hands, and fingers to assemble and/or handle precision instruments or objects*; inspecting products for conformance to prescribed specifications; directing work of others; demonstrating operation of machines; and employing math skills to plan schedules and maintain production records and reports.

SCO, Part A., Section 06.01 (available on Westlaw at SCODICOT 06.01) (emphasis added). While this description notes that skills and abilities usually required include "using eyes, hands, and fingers," it does not state that the use of both hands is required all the time in this type of work, or that use of only one hand for up to ten minutes of each hour would be prohibitive. See id. Accordingly the vocational expert's testimony that a person with plaintiff's functional limitations

14

could perform assembly work is not contradicted by the SCO, and the ALJ properly relied upon the vocational expert's testimony in determining plaintiff could perform substantial gainful work.

The Fourth Circuit rejected a similar argument in Byrd v. Apfel, No. 98-1781, 1998 WL 911718 *6 (4th Cir. Dec. 31, 1998). There plaintiff argued that the ALJ erred in relying upon vocational expert testimony that identified jobs available to plaintiff which involved reaching. She argued that because she was restricted from "overhead reaching," the occupational testimony by the vocational expert conflicted with the DOT. Id. The plaintiff cited to descriptions in the SCO, which indicated that "either continual, frequent, or occasional reaching is usually required for the jobs identified." Id. The court rejected the plaintiff's argument that there was a conflict between the testimony and the SCO, determining as pertinent here, "[a]lthough reaching is involved in these jobs, the reaching does not necessarily conflict with [the plaintiff's] restriction from overhead reaching. The job descriptions do not state that overhead reaching is required." Id.

In this case, similar to the circumstances in Byrd, where the SCO descriptions here do not specifically require the use of both hands continually, there is no conflict between the vocational expert's testimony and the SCO. Accordingly plaintiff's objection raising this issue is overruled.

2. Number of Jobs Identified by Vocational Expert

Plaintiff argues that the vocational expert's testimony was deficient because the vocational expert "did not make clear" that the number of jobs identified was that which remained in each occupation after accounting for plaintiff's limitations, particularly the requirement of alternating between sitting and standing. (Obj. 13-15). This argument is belied by the record. As the magistrate judge noted, the hypothetical posed to the vocational expert precisely set out plaintiff's RFC limitations as determined by the ALJ, including the requirement that plaintiff must alternate between

sitting and standing and use a cane while standing. (M&R 25; R. 52-53). Immediately thereafter, the vocational expert testified that "[b]ased on <u>these limitations</u>... the hypothetical individual would be able to perform work at the light, unskilled bench type work," specifically recognizing that this would provide plaintiff with the ability to alternate between sitting and standing. (R. 53). After the ALJ further specified that the hypothetical person would be required to alternate between sitting and standing "every thirty minutes for no more than five minutes at a time," the vocational expert confirmed that this would not change his response to the hypothetical. (<u>Id.</u>). Therefore, the vocational expert properly made clear that the number of jobs identified was that which remained after accounting for plaintiff's limitations.

Plaintiff faults the ALJ for relying on the vocational expert's testimony regarding the number of jobs available in North Carolina, where the vocational expert admitted on cross examination that he had not actually observed any assembly jobs in North Carolina in which the employer accommodated a sit/stand option. (Obj. 15). The vocational expert testified that he based his North Carolina job totals on census data, Bureau of Labor statistics, and North Carolina occupational data, but he noted he had observed such assembly jobs only in Georgia and Alabama. (R. 56). Plaintiff argues that this testimony fails to carry the Commissioner's burden. The court disagrees.

As the magistrate judge noted, where a plaintiff suffers from limitations that restrict his ability to perform a full range of work at a given exertional level, the Commissioner must "produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant," <u>Hammond v. Heckler</u>, 765 F.2d 424, 426 (4th Cir.1985), and the Commissioner may rely upon testimony of a vocational expert for this purpose. See <u>Wilson v. Heckler</u>, 743 F.2d 218, 221-222 (4th Cir.1984). In addition, the Commissioner may rely upon "various publications

16

issued by the Bureau of the Census, the Social Security Administration, and state employment agencies." Cline v. Chater, No. 95-2076, 1996 U.S. App. LEXIS 8692, *10-11 (4th Cir. Apr. 19, 1996).

In this case the vocational expert testified as to the existence of a total of 16,600 jobs available in North Carolina and 2,810,000 in the national economy, based upon the limitations specified in the ALJ's hypothetical. (R. 53). Where the vocational expert relied both upon the publications noted above, as well as personal observations of workplaces in Georgia and Alabama, the Commissioner properly met its burden of providing "specific vocational evidence showing that the national economy offers employment opportunities to the claimant." Hammond, 765 F.2d at 426. Given that the Commissioner must demonstrate that "the national economy" offers employment opportunities, id., the lack of personal observations in North Carolina does not undermine the Commissioner's decision. Further, plaintiff also has not cited any authority discouraging a vocational expert from relying upon observations in one state as part of the basis for calculating similar jobs available in another state, especially where, as here, the vocational expert also referenced publications such as state employment data.

In sum, the vocational expert's testimony provided substantial evidence for the Commissioner's decision that plaintiff can perform substantial gainful work.

## CONCLUSION

Upon de novo review of those portions of the magistrate judge's M&R to which specific objections have been filed, and upon considered reviewed of those portions of the M&R to which no such objection has been made, the court ADOPTS the findings and recommendations of the magistrate judge in full, GRANTS defendant's motion for judgment on the pleadings (DE # 32),

Case 2:11-cv-00021-FL Document 39 Filed 09/21/12 Page 17 of 18

DENIES plaintiff's motion for judgment on the pleadings (DE # 30), and upholds the final decision of the Commissioner. The clerk is directed to close this case.

SO ORDERED this the 21st day of September, 2012.

LOUISE W. FLANAGAN
United States District Judge